UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JERRY HARKINS,

    Petitioner,

vs.

JACK PALMER, *et al.*,

    Respondents.

3:10-cv-00372-LRH-WGC

**ORDER**

This is a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed by a Nevada state prisoner. This matter comes before the Court on the merits of the petition.

**I.  Procedural History**

Pursuant to a jury verdict, petitioner was found guilty of murder with the use of a firearm. (Exhibit 77).[1] Petitioner was sentenced to life imprisonment with the possibility of parole after twenty years, and was sentenced to an identical, consecutive term for the use of a firearm. (Exhibit 77). Petitioner appealed his conviction to the Nevada Supreme Court. (Exhibit 78). By order filed October 12, 2006, the Nevada Supreme Court affirmed the conviction. (Exhibit 95). Remittitur issued on November 7, 2006. (Exhibit 96).

On November 2, 2007, petitioner filed a post-conviction habeas petition in state district court. (Exhibit 97). Following an evidentiary hearing, the state district court denied the petition. (Exhibits 113 & 119). Petitioner appealed the denial of the state habeas petition. (Exhibit 115). On June 9,

---

[1] The exhibits referenced in this order are found in the Court's record at ECF Nos. 17-20.

2010, the Nevada Supreme Court affirmed the denial of the state petition. (Exhibit 134). Remittitur issued on July 8, 2010. (Exhibit 137).

Petitioner mailed his original federal habeas petition to this Court on June 17, 2010. (ECF No. 8). The original petition raises seven grounds for relief. (*Id.*). Respondents moved to dismiss the petition. (ECF No. 16). Petitioner filed a motion to amend along with a first amended petition containing two grounds for relief. (ECF Nos. 35 & 37). By order filed December 20, 2011, this Court denied the motion to dismiss and directed respondents to file an answer to the first amended petition. (ECF No. 36). Respondents filed an answer on January 18, 2012. (ECF No. 38).

On March 7, 2012, petitioner filed a motion to amend and a proposed second amended petition. (ECF Nos. 41 & 45). Petitioner sought to reassert the grounds made in his original federal petition, and to assert the two following additional claims:  First, "Petitioner claims 6th and 14th Amendment violations in that state courts allowed false and fraudulent statements to be used causing a fundamental miscarriage of justice in that the petitioner is actually and factually innocent of first degree murder." (ECF No. 45, at pp. 3-5). Second, "Petitioner's 6th and 14th Amendment rights were violated when [the] state court refused to declare a mistrial when rules and law dictated the necessity for it and when it declared multiple counts of harmful error harmless. Petitioner now lists the cumulative harmful errors." (ECF Nos. 45, at pp. 5-6). Petitioner explained, in his motion to amend, that he had difficulty accessing the prison law library and he received unsound legal advice from a fellow inmate when he filed his first amended petition, which omitted all claims of the original petition, except Grounds 1 and 2. (ECF No. 41, at p. 2). By order filed April 16, 2012, this Court granted petitioner's motion to file the second amended petition and to reinstate the grounds made in the original federal petition. (ECF No. 44). The Court directed respondents to file an answer to the grounds raised in the original petition and the second amended petition. (*Id.*). On May 16, 2012, respondents filed an answer to the original petition and the second amended petition. (ECF No. 46). Petitioner filed a reply on June 19, 2012. (ECF No. 48).

///

///

**II. Federal Habeas Corpus Standards**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)). The formidable standard set forth in section 2254(d) reflects the view that habeas corpus is "'a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. ___, ___, 131 S.Ct. 770, 786 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*,

529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409). In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

In a federal habeas proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the burden set in § 2254(d) and (e) on the record that was before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1400 (2011).

**III. Discussion**

**A. Ground 1 of Original Petition**

Petitioner asserts that the trial court erred in admitting testimony from a witness of the victim's statement that: "Jerry [petitioner] shot me and he was paid to do it." (ECF No. 8, at p. 3). The statement was made in response to a 911 dispatcher's question. The Nevada Supreme Court analyzed the claim under the Sixth Amendment's Confrontation Clause and denied the claim on two independent grounds: (1) the statement was a dying declaration, and therefore was an exception to the protection afforded by the Sixth Amendment; and (2) the statement was not testimonial. (Exhibit 95, at pp. 6-21).

The Sixth Amendment's Confrontation Clause provides that: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. "The right to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). Moreover, the right to confrontation is limited to specific guarantees – that a criminal defendant will be able to assess the credibility of a live, in-court, face-to-face questioning.

*See Crawford v. Washington*, 541 U.S. 36 (2004).  The right to cross-examination under the Confrontation Clause is a "functional" right which falls into two categories: "cases involving the admission of out-of-court statements and cases involving restrictions imposed by law or by the trial court of the scope of cross-examination."  *Kentucky v. Stincer*, 482 U.S. 730, 737 (1987) (*quoting Delaware v. Fensterer*, 474 U.S. 15, 18 (1985)).  "Of course, the Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'"  *Stincer*, 482 U.S. at 740 (*quoting Fensterer*, 474 U.S. at 20 (emphasis in original)).

While the Court in *Crawford* "le[ft] for another day any effort to spell out a comprehensive definition of 'testimonial,'" the Court provided some guidance for determining whether evidence is testimonial.  *Crawford*, 541 U.S. at 68.  First, the Court observed that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."  *Id.* at 51.  Second, the Court described a "core class" of "testimonial statements," noting that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or a former trial; and to police interrogations."  *Id.* at 51-52.

Dying declarations are not subject to the limitations of the Confrontation Clause.  *See id.* at 56 n.6 (finding indisputable that dying declarations are an exception to the requirements of the Confrontation Clause, even where declaration is clearly testimonial); *see also Giles v. California*, 554 U.S. 353, 358 (2008).  A "dying declaration" is a statement "made by a speaker who was both on the brink of death and aware that he was dying."  *Giles*, 554 U.S. at 358.

A Confrontation Clause violation is subject to harmless error analysis.  *United States v. Bowman*, 215 F.3d 951, 961 (9th Cir. 2000).  "In the context of habeas petitions, the standard of review is whether a given error 'had substantial and injurious effect or influence in determining the jury's verdict.'"  *Christian v. Rhode*, 41 F.3d 461, 468 (9th Cir. 1994) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

///

1    In Ground 1 of the original petition, petitioner argues that the Nevada Supreme Court's decision was based on the erroneous assumption that "all 911 operators are police" and that the victim's statement was "testimonial hearsay." (ECF No. 8, at p. 3). Considered alone, the Nevada Supreme Court's finding that the 911 dispatcher was an agent of the police suggested the victim's statement was testimonial, but the Nevada Supreme Court determined that this finding was outweighed by other findings, specifically, that: (1) the victim's comment that Harkins was paid to shoot him was spontaneous; (2) the purpose of the inquiry was to address the victim's medical needs and ascertain the danger of the situation; (3) the statement was made during an ongoing emergency in which Harkins could still have been a threat to the victim. (Exhibit 95, at pp. 19-20). These factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). Moreover, even if the statement should not have been admitted, this Court finds that it was harmless error, as it would not have had substantial and injurious effect or influence in determining the jury's verdict. *Christian v. Rhode*, 41 F.3d 461, 468 (9th Cir. 1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Ground 1 of the original petition is denied.

**B. Ground 2 of Original Petition**

Petitioner asserts that the trial court erred in its jury instruction on self-defense based on apparent danger. (ECF No. 8, at p. 5). To obtain federal habeas relief based on an improper jury instruction, petitioner must establish that the instruction so infected the entire trial that the resulting conviction violates due process. *Masoner v. Thurman*, 996 P.3d 1003, 1006 (9th Cir. 1993); *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe,* 431 U.S. 145, 154 (1977). Demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment requires the court to determine "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," not

6

whether the instruction is "undesirable, erroneous, or even universally condemned." *Henderson v. Kibbe,* 431 U.S. at 154 (citations omitted); *Estelle v. McGuire,* 502 U.S. 62, 72 (1991). In reviewing jury instructions, the court inquires as to whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation. *U.S. v. Garcia-Rivera,* 353 F.3d 788, 791 (9th Cir. 2003) (citing *United States v. Frega,* 179 F.3d 793, 806 n.16 (9th Cir. 1999) (internal citations omitted). The question is whether an instruction so infected the entire trial that the resulting conviction violated due process. *Estelle*, 502 U.S. at 72. An instruction may not be judged in isolation, "but must be considered in the context of the instructions as a whole and the trial record." *Id.* Furthermore, jurors are presumed to follow the instructions that they are given. *U.S. v. Olano,* 507 U.S. 725, 740 (1993).

The instruction at issue in this case is the following:

> Self-defense is a defense to homicide even though danger to life or personal security may not have been real. If you find that Mr. Harkins, under the circumstances, and from his viewpoint, would have reasonably believed that he was in imminent danger of death or great bodily harm, you may find him not guilty.

(Exhibit 69, Instruction 37). The Nevada Supreme Court found that the instruction's language that "you may find him not guilty" was contrary to the mandatory language of a sample instruction in *Runion v. State*, 116 Nev. 1041, 13 P.3d 52 (2000), but concluded that the error was harmless beyond a reasonable doubt. (Exhibit 95, at pp. 21-24). The Court noted that the trial court also gave the jury additional instructions from *Runion*, including an instruction stating that the jury "must" find Harkins not guilty if the State failed to meet its burden of proof regarding the self-defense theory. (Exhibit 95, at pp. 23-24; *see also* Exhibit 69, Instruction 36). Second, the Nevada Supreme Court noted that there was substantial evidence presented at trial indicating that Harkins was the original aggressor:

> Substantial evidence indicates that Harkins was the original aggressor. Harkins returned to Deriso's house with a loaded gun after having donned a latex glove. Although Harkins testified that he hid the gun under his shirt when Deriso answered the door, the jury could have reasonably believed that, given the previous altercation, Harkins was the aggressor. Further, Harkins' apparent danger theory stems from his alleged belief that Deriso stabbed him in the neck with either a screwdriver or an ice pick. However, the police recovered no such

> implement at the scene. The only similar item recovered was a knife, which had Deriso's blood, not Harkins' blood, on it. Harkins also testified that Deriso grabbed him by the hair, but the only clumps of hair recovered from the scene were Deriso's. Based on these facts, and the other, proper, jury instructions, we conclude that the district court's error in the instruction was harmless beyond a reasonable doubt.

(Exhibit 95, at p. 24); see also Exhibit 64B, at pp. 177-85 (testimony of Matthew Mays, lead forensic investigator, describing evidence collected at victim's residence); Exhibit 67A, at pp. 68-73 (testimony of Renee Romero, criminologist, linking Harkins to DNA in hair and on bloody knife found at victim's residence). The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court finds that jury instruction #37 did not infect the entire trial such that the resulting conviction violates due process. Moreover, any instructional error was harmless, as the jury instruction would not have had a substantial and injurious effect or influence in determining the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Federal habeas relief is denied as to Ground 2 of the original petition.

**C. Grounds 3 and 7 of Original Petition**

In Ground 3 of the original petition, Harkins asserts that the Nevada Supreme court failed to address three claims raised on direct appeal. (ECF No. 8, at p. 7). The claims at issue are: (1) the prosecution failed to prove beyond a reasonable doubt that Harkins did not act in self-defense; (2) the trial court erred in not granting a mistrial based on an outburst at trial by the victim's son; (3) the prosecutor committed misconduct during closing arguments. (*Id.*). In Ground 7 of the original petition, Harkins asserts that the Nevada Supreme Court failed to address his claim on appeal from the denial of his habeas petition that the State failed to collect exculpatory evidence. (ECF No. 8, at p. 15).

///

As to Ground 3, the Nevada Supreme Court considered the three claims on direct appeal and summarily denied them as lacking merit. (Exhibit 95, at p. 2 n.2). As to Ground 7, petitioner's claim that the State failed to collect exculpatory evidence, the Nevada Supreme Court ruled that petitioner failed to demonstrate good cause for failing to raise the claim on direct appeal and denied the claim as procedurally barred under NRS 34.810(1)(b)(2). (Exhibit 134, at pp. 3-4). As such, petitioner's argument that the Nevada Supreme Court failed to address those claims is inaccurate. This Court denies federal habeas relief on Grounds 3 and 7 of the original petition.

### D. Grounds 4-6 of Original Petition

In Grounds 4 through 6 of the federal petition, petitioner asserts that his trial counsel was constitutionally ineffective.

#### 1. Ineffective Assistance of Counsel Standard

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor,* 529 U.S. 362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland,* 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

///

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an 'objective standard of reasonableness,'... 'under prevailing professional norms.'" *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (quotations omitted). If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of the *Strickland* standard. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112-113, 129 S.Ct. 1411, 1413 (2009)). In *Cullen v. Pinholster*, the Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 131 S.Ct. at 1398-1401. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at ___, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at ___, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 788 (2011).

///

### 2. Ground 4 of Original Petition

Petitioner asserts that his trial counsel was ineffective for failing to move for a change of venue. (ECF No. 8, at p. 9). The Nevada Supreme Court addressed Harkins' claim as follows:

> First, appellant argues that his trial counsel was ineffective for failing to seek a change of venue as the case received pretrial publicity because the victim was the ex-husband of a Sparks justice of the peace. Appellant fails to demonstrate that his trial counsel's performance was deficient or that he was prejudiced. Trial counsel testified at the evidentiary hearing that there was no difficulty seating an impartial jury. Further, appellant failed to demonstrate reasonable likelihood that a fair and impartial jury could not have been seated in Washoe County. NRS 174.455; Sheppard v. Maxwell, 384 U.S. 333, 363 (1966). Given the strength of the evidence produced at trial, appellant fails to demonstrate a reasonable probability that the outcome of the trial would have been different had his counsel sought a change of venue. Therefore, the district court did not err in denying this claim.

(Exhibit 134, at p. 2). The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). Counsel was not ineffective under the deferential *Strickland* standard. *See Harrington v. Richter*, 131 S.Ct. 770, 788 (2011). Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court denies habeas relief on Ground 4 of the original petition.

### 3. Ground 5 of Original Petition

Petitioner asserts that his trial counsel was ineffective for failing to investigate witnesses who could have testified that the victim always carried a knife. (ECF No. 8, at p. 11). The Nevada Supreme Court denied this claim, as follows:

> [A]ppellant argues that his trial counsel was ineffective for failing to investigate witnesses who could have testified that the victim always carried a knife. Appellant failed to demonstrate that he was prejudiced. Other than the witness who testified at trial that the victim often carried a knife, appellant fails to identify any other witnesses that trial counsel should have investigated. Accordingly, appellant fails to demonstrate a reasonable probability that there would have been a different outcome at trial had counsel performed further investigation in this area.

(Exhibit 134, at pp. 2-3). The factual findings of the state court are presumed correct. 28 U.S.C.

1  § 2254(e)(1).  Counsel was not ineffective under the deferential *Strickland* standard.  *See Harrington*
2  *v. Richter*, 131 S.Ct. at 788.  Petitioner has failed to meet his burden of proving that the Nevada
3  Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly
4  established federal law, as determined by the United States Supreme Court, or that the ruling was
5  based on an unreasonable determination of the facts in light of the evidence presented in the state
6  court proceeding.  The Court denies habeas relief on Ground 5 of the original petition.

### 4.  Ground 6 of Original Petition

Petitioner asserts that trial counsel was ineffective for failing to find a knife or other sharp object used to stab him during the confrontation that resulted in the victim's death.  (ECF No. 8, at p. 13).  The Nevada Supreme Court considered and denied this claim as follows:

> [A]ppellant argues that his trial counsel was ineffective for failing to conduct an investigation to find the sharp object used by the victim to stab appellant and failing to argue the State failed to collect exculpatory evidence.  Appellant fails to demonstrate that he was prejudiced.  Appellant fails to demonstrate that an investigation would have uncovered the stabbing implement and appellant fails to demonstrate a reasonable probability that such an investigation would have changed the outcome of trial.  Molina v. State, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004); Wiggins v. Smith, 539 U.S. 510, 534 (2003).  Further, given the strength of the case against him, appellant fails to demonstrate a reasonable probability that the result of the proceedings would have been different if the sharp object would have been available.  Randolph v. State, 117 Nev. 970, 987, 36 P.3d 424, 435 (2001).  Therefore, the district court did not err in denying this claim.

(Exhibit 134, at p. 3).  The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).  Counsel was not ineffective under the deferential *Strickland* standard.  *See Harrington v. Richter*, 131 S.Ct. at 788.  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  The Court denies habeas relief on Ground 6 of the original petition.

///
///

**E. Ground 1 of Second Amended Petition**

Petitioner asserts that he is "actually and factually innocent of First Degree Murder." (ECF No. 45, at p. 3). Petitioner's claim is based primarily on petitioner's assertion that Whitton's testimony that the victim uttered the statement "Jerry shot me and was paid to do it," was improperly admitted at trial. (*Id.*, at pp. 3-5).

As previously discussed, the Nevada Supreme Court denied petitioner's claim that the trial court improperly admitted the statement. (Exhibit 95, at p. 6). Petitioner now asserts a new legal theory based on the admission of the statement – that he is actually innocent of murder. Because actual innocence is a distinct theory from that presented to the Nevada Supreme Court in connection with petitioner's challenge of the statement's admission, Ground 1of the second amended petition is unexhausted. Furthermore, even if the claim were exhausted, it lacks merit as an actual innocence claim.

Generally, there are two types of actual innocence claims presented in federal habeas proceedings. *See Johnson v. Knowles*, 541 F.3d 933, 935 (9th Cir. 2008). First, there are claims of actual innocence presented under *Schlup v. Delo*, 513 U.S. 298 (1995), in which a habeas petitioner attempts to establish "gateway" innocence to escape the procedure default doctrine. Under *Schlup*, a petitioner may overcome a procedural default by (1) producing "new reliable evidence [of innocence] – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," *Schlup*, 513 U.S. at 324, and (2) showing "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence," *id*. at 327. *"Schlup* claims . . . (sometimes referred to as procedural innocence claims)*, are not *themselves* constitutional claims, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Johnson*, 541 F.3d at 935 (quoting *Schlup*, 513 U.S. at 315) (emphasis in original).

Second, there are claims like those presented in *Herrera v. Collins*, 506 U.S. 390 (1993), where the petitioner alleges innocence "in spite of being afforded 'entirely fair and error free'

13

proceedings." *Johnson*, 541 F.3d at 935. "*Herrera* claims are constitutional claims in and of themselves." *Johnson*, 541 F.3d at 935. *Herrera*[2] requires a petitioner to make:

> a truly persuasive demonstration of "actual innocence" . . . [and] because of the very disruptive effect that entertaining claims of actual innocence would have on the need for finality in capital cases, and the enormous burden of having to retry cases based on often stale evidence would place on the States, the threshold showing for such an assumed right would necessarily be extraordinarily high.

*Herrera*, 506 U.S. at 417. This "contemplates a stronger showing than insufficiency of the evidence to convict" or "doubt about his guilt." *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997). Under these standards, a petitioner must "affirmatively prov[e] that he is probably innocent." *Id.*

In the instant case, petitioner never presented his actual innocence claim to the state courts and therefore, in claiming actual innocence, he is not seeking to escape the doctrine of procedural default, as in *Schlup*. Petitioner may be attempting to assert a freestanding *Herrera* claim of actual innocence, however petitioner blends his claim of actual innocence with another alleged constitutional violation that has been rejected in this order – that the trial court's admission of the victim's statement violated the Confrontation Clause. (ECF No. 45, at pp. 3-4). Petitioner fails to present this Court with any argument or evidence that meets the "extraordinary high" standard necessary to gain relief on a *Herrera* actual innocence claim. *Carriger*, 132 F.3d at 477. Habeas relief is denied as to Ground 1 of the second amended petition.

### F. Ground 2 of Second Amended Petition

Petitioner asserts that trial court improperly refused to declare a mistrial based on seven allegations of error. (ECF No. 45, at pp. 5-6). Petitioner's theory is that these errors resulted in cumulative harm. (*Id.*). This claim is unexhausted. Petitioner did not present a claim of cumulative

---

[2] The Court in *Herrera* assumed, for the sake of argument, that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim," but stopped short of deciding whether a freestanding actual innocence claim was cognizable in federal habeas corpus proceedings. *Herrera*, 506 U.S. at 417. *See also House v. Bell*, 547 U.S. 518, 554-55 (2006) (again declining to decide the question). Whether such a claim is cognizable in a *non-capital* case is also an open question. *See Osborne v. District Attorney's Office*, 521 F.3d 1118, 1130-31 (9th Cir. 2008), *overruled on other grounds by District Attorney's Office v. Osborne*, 557 U.S. 52 (2009).

1  error to the Nevada Supreme Court.  The Ninth Circuit has held that exhaustion of claims underlying
2  a cumulative error claim does not also exhaust the cumulative error claim itself:  "Briefing a number
3  of isolated errors that turn out to be insufficient to warrant reversal does not automatically require the
4  court to consider whether the cumulative effect of the alleged errors prejudiced petitioner."  *Wooten*
5  *v. Kirkland*, 540 F.3d 1019, 1025 (9th Cir. 2008).

6       Even if the cumulative error claim were exhausted, it lacks merit.  To the extent that
7  cumulative error may be grounds for federal habeas relief, the Ninth Circuit has announced that:
8  "[T]he combined effect of multiple trial court errors violates due process where it renders the
9  resulting criminal trial fundamentally unfair."  *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007).
10 This Court has reviewed the state court record and the pleadings filed by the parties.  Petitioner has
11 not demonstrated that cumulative errors occurred, and even assuming errors did occur, that such
12 errors resulted in a trial that was fundamentally unfair.  As such, this Court denies habeas relief with
13 respect to Ground 2 of the second amended petition.

14 **IV.  Certificate of Appealability**

15      In order to proceed with his appeal, petitioner must receive a certificate of appealability.  28
16 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-951
17 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  District
18 courts are required to rule on the certificate of appealability in the order disposing of a proceeding
19 adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for
20 certificate of appealability to be filed.  Rule 11(a) of the Rules Governing Section 2254 and 2255
21 Cases.  Generally, a petitioner must make "a substantial showing of the denial of a constitutional
22 right" to warrant a certificate of appealability.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S.
23 473, 483-84 (2000).  "The petitioner must demonstrate that reasonable jurists would find the district
24 court's assessment of the constitutional claims debatable or wrong."  *Id.* (*quoting Slack*, 529 U.S. at
25 484).  In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the
26 issues are debatable among jurists of reason; that a court could resolve the issues differently; or that
27 the questions are adequate to deserve encouragement to proceed further.  *Id.*  In this case, no

reasonable jurist would find this Court's denial of habeas relief debatable or wrong. The Court therefore denies petitioner a certificate of appealability.

**V. Conclusion**

**IT IS THEREFORE ORDERED** that the original petition for a writ of habeas corpus and the second amended petition, are **DENIED IN THEIR ENTIRETY**.

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

**IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT ACCORDINGLY.**

DATED this 19th day of July, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE